## No. 9755.

KNOOP, HANNEMAN & CO. ET AL. VS. J. A. BLAFFER ET ALS.

| | |
|---|---|
| 39 | 23 |
| 47 | 90 |
| 39 | 23 |
| d108 | 187 |
| 39 | 23 |
| 110 | 428 |
| 39 | 23 |
| 121 | 814 |

1. An action under R. S. 301, to enforce against the directors of a bank liability for having furnished false statements of the affairs of the bank to the State Treasurer, is *ex delicto* and prescribed by one year.

2. An action, under R. S., Sec. 300 and 301, to enforce the liability of the directors of a banking corporation for the debts of the bank, on the ground that they had participated in, or assented to, the bank making loans and discounts, whilst in an insolvent condition, is one *ex quasi delicto*, and prescribed by one year.

3. The act which gives use to a *quasi* contract, is a lawful one, and is permitted. That which gives use to a *quasi* offense is unlawful, and is prohibited.

4. Prescription cannot be eked out by inference, nor extended from one cause to another by analogy; neither can the legal interruption of prescription be so extended.

APPEAL from the Civil District Court for the Parish of Orleans. *Lazarus, J.*

*Henry Denis* for Plaintiffs and Appellants.

*T. J. Semmes & Legendre* for Defendants and Appellees.

*Braughn, Buck, Dinkelspiel and Hart* on the same side.

The opinion of the Court was delivered by

WATKINS, J. Plaintiffs filed this suit on the 29th of January, 1886, against the defendants as directors of the Mechanics and Traders' Bank of New Orleans, organized under the banking laws of this State, claiming that, on the 19th of March, 1879, and before, they were de-

positors therein for large sums, for which they are indebted to them *in solido*.

They allege that, on the 19th of March, 1879, said bank was declared insolvent, its charter forfeited, and liquidating commissioners were appointed to close its affairs; and at that date their respective deposits were due and not been withdrawn.

They further allege " that, on January 1, 1878, the said bank did not have on hand an amount in specie equal to *one-third* of all its cash liabilities at that date, exclusive of its circulating notes; and did not have on hand for the other *two-thirds* of its cash liabilities an equal amount in specie, specie-funds, bills of exchange, on discounted paper maturing within ninety days and not renewable ; that, at no time since the 1st of January, 1878, has the bank had on hand an amount in specie equal to one-third of its cash liabilities, exclusive of its circulating notes, nor has it had at any time in hand, for the two-thirds of its cash liabilities an equal amount of specie, specie-funds, bills of exchange or discounted paper maturing within ninety days and not renewable; that all these facts were to the knowledge of the said defendants, and each of them, while and during the time they were acting as directors of the said bank ; that *in violation of law*, on every legal day since the first day of January, 1878, up to the 19th of March, 1879, the said bank made loans and discounts, and that each of said defendants, *as directors of said bank, participated in or assented to each of said loans and discounts, knowing that said loans and discounts were made in violation of the law* contained in sections 300 and 301 of the Revised Statute of the State of 1870 ; that by *said violation of law* the said directors and defendants herein rendered themselves *individually liable for all debts and obligations* of the said Mechanics and Traders' Bank."

They further allege that said directors in 1878 and 1879 furnished to the State Treasurer statements of the condition, assets and liabilities of said bank for publication, and which were published, and " that in every one of those statements the said * * directors *wilfully misstated* the condition of the bank, representing same to be solvent, when, in truth and fact, the said bank was and had long before been hopelessly inslovent," and that said directors caused and assented to said statements being published, and knew that the items thereof were falsely stated, and that by said false statements they gave the bank credit and reputation for solvency, when it was entitled to none ; and that had they known the true condition of the bank, they would have withdrawn their deposits.

They aver that by their *tortious conduct, concealments and misstatements* the said directors have made themselves liable *in solido* unto them for the various amounts due them by said bank," of about $50,000.

The defendants plead in the lower court the prescription of one year to the cause or causes of action set out in plaintiffs' petition ; and from a judgment sustaining the plea plaintiffs have appealed.

In this Court defendants tender an additional plea of prescription of six months under the provision of R. S., 986,

### I.

On the face of the petition, the demands of the plaintiffs, in so far as they are founded on the alleged false statement furnished to the State Treasurer, and the concealment from depositors of the alleged insolvent condition of the bank by defendants as its directors, the plea of prescription of one year is undoubtedly good.

The conduct and acts of the directors are charged to have been wrongful, wilful and tortious, and for the resulting damage suffered the plaintiffs asks judgment *in solido*.

### II.

The plea, predicated on the charge that while in a condition of insolvency to the knowledge of the directors, the bank made loans and discounts with the acquiescence and participation of said directors, and in violation of law, is not free from difficulty.

This suit was brought under the provisions of Secs. 26 and 27 of Act 338 of 1853, it being an act "to establish a general system of free banking in the State of Louisiana." They were embodied in Secs. 300 and 301 of the Revised Statutes.

Under Sec. 2 of that Act, banking corporations created under its provisions were authorized to discount bills, notes, and other evidences of debt; to receive deposits; to buy and sell gold and silver bullion and foreign exchange; to loan money "and to exercise all incidental powers necessary to carry on said business."

Section 26 declares : "Every banker or banking company, doing business under this act, is required, in addition to securities for circulation deposited with the Auditor, to have on hands, at all times, in specie, an amount equal to one-third of their other cash liabilities; and for the other two-thirds of said liabilities, an amount equal in specie, specie-funds, bills of exchange, or discounted paper, maturing within ninety days, and not renewable." R. S. Sec. 300.

Section 27 provides : " If at any time the specie, specie-funds, and short paper held by such banker or banking company, should fall be-

low the proportions to cash liabilities prescribed in the preceding section, and shall remain so for a space of ten days, *it shall not be lawful thereafter for such banker or banking company to make any loan or discount whatever*, until its or their position is re-established according to the terms of the preceding section.

"A *violation of this* provision shall be held to be an act of insolvency and the Auditor shall cause the necessary steps to be taken for the liquidation of the affairs of such banker or banking company as in cases of insolvency; and *every director* or manager of a banking company, *who may participate in or assent to such violation, shall become individually liable for all its debts and obligations.*"

In effect the statute declares that if a banking corporation shall permit its specie, specie-funds and short paper to fall below the standard fixed, and to so remain for a period of ten days, "it shall *not be lawful*" for said corporation to make any loan or discount whatever, until its position is re-established and its affairs are put in line again.

"A violation of this provision" is *per se* an *act* of insolvency on the part of the corporation, and its *effect* upon any director of said corporation "who may participate in or assent thereto," is to make him "individually *liable* for all    *    *    the debts and obligations" of the corporation.

The statute under consideration conferred the power upon such corporations as might be organized under it, " to name and appoint such managers and *directors to administer the affairs of the corporation as they may think necessary* and proper." R. S. Sec. 277.

No additional or more specific duties or responsibilities were therein prescribed for directors than had heretofore existed, in respect to private corporations generally, other than those indicated in R. S. sec. 301.

Under the general law, " no stockholder shall ever be held *liable or responsible for the contracts or faults of the corporation*, in any further sum than the unpaid balance due to the company on the shares owned by him." R. S. 690.

This provision certainly includes the directors of a corporation.

Thus, it is perfectly clear that, by the " free banking law " of 1853, the legislature intended to place additional restrictions around corporations that should be created under it, and to impose upon persons who might be chosen to direct and administer their affairs a greater responsibility.

Hence it denominated any violation of the quoted provisions an *unlawful act* on the part of the *corporation*, and declares that the assent thereto or acquiescence therein by any *director*, should make him liable for *all* the debts and obligations of the corporation.

It is, therefore, a *violation of law* that fixes his liability. The *extent* of his liability is the *amount* of the debts and obligations of the bank; but the debts and obligations are those of the corporation. If the debts and obligations of the corporations were, at the same time, the debts and obligations of its stockholders and directors, the statute did not *increase* their responsibility, and failed in the accomplishment of its beneficent purpose.

The serious question there is, what is the *liability* sought to be imposed upon the directors, and not what are the *debts* sought to be collected.

That there are *just such debts* and obligations in favor of plaintiffs as depositors in the Mechanics and Traders' Bank, as set out in their petition, is conceded by defendants for all the purposes of their pleas of prescription.

The plea under consideration is placed under R. C. C. 3536, which is to the effect that actions for damages " resulting from offenses or *quasi* offenses," are prescribed by one year. R. C. C. 2315 *et seq.*; 25 Ann. 414, Lizardi vs. The New Orleans, Canal and Banking Company; 20 Ann. 151, Williams vs. Grevier; Id. 214, Jennings vs. Gasselin; Id. 323, Millspough vs. City; 23 Ann. 162, Harvey vs. Waldon ; 32 Ann. 220, Caillonet vs. Franklin.

Does the *liability* sought to be enforced grow out of an offense or a *quasi* offense ? Did it result from any *act* of the defendant directors, whereby damage was caused the plaintiffs, and which they are obliged to repair on account of their *fault ?* R. C. C. 2315. Did it result from the negligence of the directors, or through their imprudence or want of skill ? R. C. C. 2316.

Or was it occasioned by the *act* of persons for whom they are answerable ? R. C. C. 2317, 2320.

But the plaintiffs contend that their action arises *ex quasi contractu,* and not *ex delicto.*

To determine its true interpretation, we must contrast the articles of the Civil Code relating to contracts and *quasi contracts.*

Article of the Code, 2293, declares : " *Quasi* contracts are the *lawful* and purely voluntary *acts* of a man, from which there results any obligation whatever to a third person."

Article 2294 provides : " That all acts from which there results an *obligation without an agreement* in the manner expressed in the preceding article, form *quasi* contracts. But there are two principal kinds which give rise to them, to-wit : The transaction of another's business, and the payment of a thing not due." C. P. 30.

In the present case, it is not claimed that defendants entered into any specific covenant, or agreement, with the plaintiffs, in any event to become liable for the debts and obligations of the bank. Thus there was no contract. It is not contended that the directors, of their own accord, undertook the transaction of any business for the plaintiffs; nor is it contended that the directors unduly received plaintiffs' money that was deposited in the bank, or that they, through inadvertance or mistake, delivered over their deposits to the directors, instead of delivering them to the officers of the bank. On the contrary the plaintiffs in their petition declare that the bank made loans and discounts *"in violation of law,"* and "that the directors of said bank participated in and assented to each of said loans and discounts, *knowing* that said loans and discounts were made *'in violation of the law.'*"

All "personal actions are grounded on one of the four causes which give rise to personal obligations. The causes are contracts, or *quasi* contracts; offenses, or *quasi* offenses." C. P. 28.

"Personal actions arise from offenses, as when one has become liable to another for the injury he has inflicted on him by some *crime* or *offense,* such as theft or slander." C. P. 31.

"Personal actions arise from *quasi* offenses, when the ground of action is the *injury done to another by one of those faults* which are not considered as *real crimes or offenses.*"

These different articles of the two codes have frequently passed under judicial investigation with the substantial result of placing the cases examined, in reference thereto, under one or the other of them, according to their respective features, without making any plainer the words of the text.

This Court in a recent case had occasion to examine and interpret the law under consideration; *i. e.,* the Rev. Stats., secs. 300, 301.

We refer to Lacombe vs. Milliken, 36 Ann. 367, in which the Court say: "The action is founded on sections 300 and 301, R. S. Two *other* grounds for the infliction of a *penalty* are alleged in the petition." etc.

In Kent's Commentaries the rule is laid down: "If a statute inflicts a *penalty* for doing an act, the penalty implies a prohibition, and the *thing is unlawful,* though there be no prohibitory words in the statute. * * * The rule is now settled that, the statutory prohibition is equally efficacious, and the *illegality* of the breach of a statute the same, whether a thing be prohibited *absolutely or under a penalty.* 1st vol., p. 467.

The statute of 1853 contains a prohibition against the corporation doing certain acts. It prohibits it from making any loans or discounts

during the period of time it is out of line and declares that the same *"shall not be lawful."*

It inflicts upon the corporation the penalty of insolvency; and upon the directors participating therein the penalty of being made liable for all the "debts and obligations" of the bank."

The defendants are not, by the Statute, declared liable for injury suffered by plaintiffs through "a crime or offense committed; but for that inflicted by a fault, which is not considered as a real crime or offense." C. P. 31, 32; R. C. C. 2315.

Their liability, as stated, has been incurred by reason of their failure to perform a lawful act, and also for their participation in an *unlawful act*. This was a fault, a wrong-doing, though not denounced by the Statute as a crime or misdemeanor.

Plaintiffs' action is one *ex quasi delicto* and not *ex quasi contractu*.

In City of New Orleans vs. Southern Bank, 31 Ann. 566, the Court said: "The marked distinction between a *quasi* contract and an offense or *quasi* offense is that the act which gives rise to a *quasi* contract is a *lawful* act, and is therefore *permitted;* while the act which gives rise to an offense or *quasi* offense is *unlawful* and therefore *forbidden*.

The court sustained the defendant's plea of prescription of one year, and so did the judge *a quo*, and we think he was correct in so doing.

### III.

But the plaintiffs' counsel claims that the prescription was legally interrupted by the suit of Lacombe vs. Miliken, 36 Ann. 367.

This suit was filed and service accepted by defendants on the 29th day of January, 1886, and that suit was finally decided by this court in April, 1884.

More than one year had elapsed between the decision of the one and the institution of the other suit.

Even if that were not conclusive against the plaintiffs' petitions in that regard, we cannot consider that suit as having the legal effect of an interruption. It was held in that case that " the liability of the directors is not in favor of the bank, or its liquidators, but in favor of the creditors of the concern, who may, or may not, at their option, enforce it, for their separate benefits." The plaintiffs, in that case, were without a cause of action, and this is the first appearance of the creditors of the bank.

Prescription is *stricti juris*, and cannot be eked out by inference, nor extended from one cause to another by analogy; neither can the legal interruption of prescription.

Under the views herein expressed it is unnecessary that we should pass upon the plea of prescription of six months, urged by defendants.

Judgment affirmed.

### ON APPLICATION FOR REHEARING.

Plaintiffs present an earnest argument in favor of their application, and on account of the great importance of the case, we will supplement the opinion complained of.

#### I.

They insist that we have misconstrued the banking law of the State and have limited their claim to the amount of the deposits as the measure of damages.

It was not the purpose or intention of the opinion to thus limit the operation or effect of the banking laws. We simply held that the liability of directors, under the state of facts presented, was one arising *ex delicto* and not *ex quasi contractu* as contended.

The liability sought to be enforced in this instance happened to be for the *debts* of the bank, i. e., the plaintiffs' deposits. We had no occasion to place any such restriction upon the liability of directors, in reference to *damages* or other obligations incurred by the corporation, as supposed.

#### II.

We are not disposed to recede from the views expressed in reference to *quasi contracts*.

Counsel insist that "it is not from the violation of the banking law that the *quasi* contract results;" but that it results "from the lawful act of accepting the directorship of the bank, and receiving the deposits. The liability itself flows *first* from the *quasi* contract, and *then* from the violation of law."

The manifest fault of this argument is that the directors of the bank are taken for the bank itself.

The opinion quotes from the statute itself the enumerated duties of the directors of banking corporations, and also the section of the Revised Statutes which defines the liability of the stockholders of corporations generally, for the purpose of making it *plain* that it was *not* one of the duties of directors to *receive, or have the care of deposits* of the bank. For this reason they did not enter into any contractual relations in reference to funds deposited in the bank.

The illustrations given are not apposite, for the reason that tutors, executors, administrators and agents are entrusted with the funds, under specific provisions of the law ; and if they misappropriate them

they are liable under those laws. The same is true of the *negotiorum gestor*. In each of those relations exists a trust to be performed.

But the directors of a bank are in no sense the trustees, agents or *negotiorum gestores* of the depositors of the bank, and incurred no contractual obligations, or relations under the banking law. By assenting to, or acquiescing in the loans and discounts made by the corporation, while in an insolvent situation, those directors violated the *penal* provisions of the statute, and subjected themselves to the payment of its " debts and obligations. "

### III.

While it is true that the opinion does not *in terms* decide " whether a contract did, or did not, arise from the statute itself, by the fact of the parties acting under it, and, therefore, accepting the stipulations of such statute, made by law, in favor of the creditors of the bank;" it does in effect, by holding that the liability of the directors, under the facts presented, arose *ex delicto* and not *ex quasi contractu*.

Counsel insist that "when parties act under a statute which creates specific rights, obligations and liabilities, the Statute itself becomes a contract between the parties, and their acting under it shows their implied acceptance of its stipulations."

Applying this principle of law and precept of jurisprudence to the banking law under consideration, and we find, as stated in the preceding paragraph, that it imposed no duty upon the directors in reference to funds deposited with the corporation ; and by undertaking the discharge of their duties as such, which are exclusively administrative in their character, they incurred no contractual obligation toward the depositors. The penalty that the law imposes upon directors who impliedly assent to any violation of the law by the corporation operates as merely a safeguard for the protection of depositors, on the happening of a contingency that may arise necessitating its enforcement.

But that liability *is not contractual.* We fail to perceive any analogy between the case as stated and that suggested by counsel of a municipal corporation issuing bonds, in pursuance of an enabling law, and securing their payment by tax levies. In such case the law is considered as read into the contract, and it cannot thereafter be changed to the prejudice of the holders of such bonds, until same are fully paid. The tax levies are the trust of the creditor. The duty is specifically imposed upon the corporation, and their acts cannot be recalled to the prejudice of third persons.

## IV.

Counsel complains that no attention was given to the grounds on which *he* particularly *relied* as interrupting prescription urged by defendants, viz: the acknowledgment of the bank's liability in the account of the liquidating commissioners, filed on the 9th of February, 1880, and upon which plaintiffs are placed as creditors.

As the opinion in effect declared, this court held in Lacombe vs. Milliken, 36 Ann. 369, that liability accrues, *not* in favor of the *bank* in liquidation, which is a *debtor* to its creditors, but in favor of those creditors, hence that suit did not have the effect of interrupting prescription, it being a suit by the commissioners of the bank, and they without any cause of action.

The correctness of this view the plaintiffs' counsel inferentially admits.

Now, we submit—and so decide—that it follows, as a necessary corollary from that argument, that the account and tableau of distribution was but an acknowledgment, or admission of the *debts* of the bank, to and in favor of the plaintiffs and other *creditors.* The commissioners had no more authority to *admit the liability of the directors on their account 'than they did to sue them for its recovery.*

They take this incorrect premises from which to argue that, if the directors are liable *ex delicto,* they are liable *in solido* under R. C. C. 2324, as wrong-doers, with the corporation.

But defendants are not proceeded against under that article, but *explicitly* and *distinctly* under the banking law, and for the enforcement of a particular liability thereunder, for the *debts of the bank.*

It is sufficient answer to say that the statute declares that directors "shall become *individually* liable for" the debts and obligations of the bank. The statute does not give such a liability *the character or quality of solidarity,* and we will not.

The case cited by counsel ( Morgan vs. Metayer, 14 Ann. 612 ) only involves an ordinary *contract* of two debtors *in solido,* one of whom became insolvent, and acknowledges the debt on his *bilan.* We regard it as inapplicable.

In conclusion we have only to say that we adhere to the conclusion first announced, and the rehearing is therefore denied.

Rehearing refused.