No. 14,055.

CHARLES GORDON vs. JOHN E. STANLEY, REGISTER OF CONVEYANCES, ET ALS.

SYLLABUS.

1. Whilst it is true that mere error, negligence, or imprudence, resulting in injury to another, may be a *quasi*-offense, it is also true that one may, by contract, bind himself to compensate such injury ; and, because the injured party has an action in damages as for a *quasi*-offense, it does not follow that he should be denied the right to sue on his contract, if he has one, and prefers that remedy.

2. The bond given by the register of conveyances for the parish of Orleans, as required by Section 3153, R. S., constitutes a contract between that officer and the state, for the benefit of those interested, that he will faithfully discharge the duties of his office, and, whilst an act of omission, or commission, with respect to such duties, considered by itself, may be a *quasi*-offense, it is also a breach of the obligation of the bond, and an action on the bond for damages resulting therefrom is an action *ex contractu,* which is not barred by the prescription of one year, applicable to *quasi*-offenses.

Gordon vs. Stanley.

3. Under C. C. 2257, it is the duty of the register of conveyances for the parish of Orleans when called upon for a certificate showing whether certain property has been alienated to include in the certificate issued by him any alienation which may have been registered in the books of his office, whether appearing in the indices or not; and, where he certifies that, "according to the records of his office," the property has not been alienated, he will be liable for the damages sustained by the party acting upon such certificate if it appears that a conveyance was registered in the books, though not properly indexed.

4. A lender, who has advanced money on the faith of a certificate showing the non-alienation of property, supposed to belong to the borrower, who mortgages the property to secure the debt, has a right of action against the register and his sureties, on the bond of the former, to recover the loss sustained, but he must prove the loss with reasonable certainty.

IN RE Charles Gordon, applying for *Certiorari*, or writ of review, to the Court of Appeal, Parish of Orleans, State of Louisiana.

*Solomon Wolff* and *Benjamin Rice Forman*, for petitioner.

*Dinkelspiel & Hart* and *Conrad G. Collins*, for respondents.

The opinion of the court was delivered by

MONROE, J. This is an application for the review of a judgment rendered by the court of appeal for the parish of Orleans. The record, with the evidence adduced, which has been sent up in response to the writ of *certiorari* herein issued, presents the following case, to-wit:

Charles Gordon, the applicant, who resides in Shreveport, through his agent, Solomon Wolff, who resides in New Orleans, was applied to by Mrs. Martile J. Baker, acting through Levin R. DePoorter, for a loan of $1250, to be secured by mortgage on real estate said to belong to Mrs. Baker and situated in New Orleans; and the loan was made by his agent and attorney, Wolff, after the latter had examined the title to the property offered as security, and after the defendant, who was at that time register of conveyances, had certified that it had not been alienated. The applicant received, as evidence of the loan, three notes of the borrower, two of which, for $500 and $300, respectively, were dated June 30th, 1898, and the other, for $400, August 3rd, 1898; all of them being payable one year from date and identified with the act of mortgage by which they purport to have been secured. The first two notes were not paid at maturity and the holder, acting through the same attorney, having obtained the written authority of the maker to

have the property sold at auction, caused it to be advertised with that view, when it was made known that it belonged to Jacob Holzenthal, who had acquired it from Otto Walther, who, in turn, had acquired it from Mrs. Martile J. Baker by an authentic act, dated February 10th, 1894, and duly registered in the conveyance office.

These facts were brought to the knowledge of the applicant's attorney about July 13th, 1899, and, on July 19th, he communicated them to the register of conveyances and demanded that the latter should hold the applicant harmless, and he subsequently obtained judgment against Mrs. Baker, the mortgagor, for the amount of the notes, with interest, and issued execution thereon. The original *fieri facias* was returned *nulla bona,* November 13th, 1899, but there is in the record, an *alias* writ under which some personal property appears to have been seized in December, 1900, the sheriff's return, dated February, 1901, showing that he had retained a copy of the writ, and was still maintaining the seizure. In the meanwhile, on November 20th, 1899, the applicant brought suit on the official bond of the register of conveyances, against that officer and his sureties, setting forth the facts which have been hereinbefore recited (save as to the *alias fi. fa.*) and also alleging that, so far as he was informed, Mrs. Baker was not financially in a condition to entitle her to the loan which she had obtained, and that he would not have made it if he had not been misled by the certificate of non-alienation of the property by which it purported to be secured, and he prayed judgment against the parties made defendant in the sum of $1576.27, with interest and costs. The defendants filed an exception of no cause of action, and one of the sureties filed additional pleas of discussion, and prematurity of action. The exception of no cause of action was maintained, but, on appeal, the judgment was reversed and the case remanded. Thereupon, the register of conveyances answered, denying that the plaintiff acted on the faith of the certificate, as alleged, or that he had sustained any loss, and alleging that the sale from Mrs. Baker to Walther had been made during the incumbency of the preceding register and had not been indexed and that he was not responsible for his failure to report the same. The sureties made no further appearance and no further steps were taken against them and, after trial on the merits, the demand as to the register was again rejected, and the case was again appealed, and, in the appellate court, the principal defendant pleaded the prescription of one year.

Two of the judges of the court of appeal adopted the view that the action arises *ex delicto,* and is barred by the prescription of one year from the date of the issuance of the certificate, and that view was made the judgment of the court; whilst the third member of the court, although agreeing with the reasoning in the majority opinion, yielded to what he conceived to be the more recent jurisprudence of this court, to the effect that the action, having been brought upon the bond, must be considered as *ex contractu,* and that the case should have been considered upon its merits.

Dealing with the question as an original one, our learned brethren, constituting the majority of the court of appeal, after refering to the fact that a contract is an agreement by which one person obligates himself to another, to give, to do, or permit, or not to do, something expressed, or implied, in such agreement, whilst a *quasi offense* is an act by which one person, without malicious intent, but through error, negligence, or imprudence, causes damage to another, conclude that the issuance by the register of conveyances, of the misleading certificate of non-alienation in the instant case was not the result of any agreement or contract between him and the plaintiff, but that it was a *quasi*-offense and that, hence, the action to recover damages resulting therefrom is barred by the prescription of one year, under C. C. 3536. This would be true if only the act, itself, were to be taken into account, but such is not the case. The applicant sues to enforce the obligation of a written instrument executed by the defendant whereby the latter agreed and bound himself, under a penalty of $15,000, "well and faithfully to discharge and perform all the duties incumbent on him as register of conveyances," etc. And he was joined in the execution of that instrument by three other persons, who bound themselves, under a penalty of $5000, each, that he would do as he agreed, and who have no connection with, and are in no wise liable for, his acts of commission or omission, save as they have thus agreed and bound themselves.

Whilst it is true, therefore, that mere error, negligence, or imprudence, resulting in injury to another, may be a *quasi* offense, it is also true that one may, by contract, bind oneself to compensate such injury; and, because the sufferer may have an action in damages as for a *quasi* offense, it does not follow that he should be denied the right to sue on his contract, if he has one, and prefers that remedy.

The distinction thus indicated was recognized by this court more than half a century ago. Thus; Brown vs. Gunning's Curatrix *et al.,* 19 La. 462, was a suit, on the bond of the curatrix of William Gunning, by a creditor of the succession whose claim had been acknowledged upon an account which had been homologated. It was urged, among other grounds of defense, that "all actions in damages for mal-administration, neglect to perform the duties of a curatrix, and all other damages resulting from *quasi offenses* are" (were) "prescribed against in one year." The court said: "We have attentively examined the plea of prescription filed in this court. This is an action, arising *ex contractu,* on the bonds given by the parties, not one, sounding in damages, for an offense or *quasi* offense. The cases in 6 Martin N. S. 665-691 were both actions against the sheriffs, personally, for damages, and not actions on their official bonds, alleging breach thereof. Had such been their character, we imagine that the decision of this court would have been different from what it was."

In Brigham, curator, vs. Bussey *et al.,* 26th Ann. 676, the plaintiff brought suit on the official bond of the recorder of the parish of Morehouse for damages resulting from the failure of the recorder to reinscribe a judgment within the proper time, and the recorder and his sureties pleaded the same prescription and supported it with the same arguments which are now urged. This court said: "In our opinion, the action is *ex contractu.* The recorder was required by law to enter into a bond with two good sureties for the faithful performance of his official duties, and the law made it his duty to reinscribe the judgment when duly called upon to do so. It was, then, a special duty embraced within the obligation of his bond, and his failure, or that of his deputy, duly appointed, to perform the duty is a breach of his bond, on which he and his sureties may be sued therefor. It is only through or by the bond that the sureties have any connection whatever with the acts or omissions of the recorder or his deputy. * * * We concur in the opinion that "M. Marcade has, in his commentary on the Napoleon Code developed the distinction between damages *ex delicto* and damages *ex contractu* with his usual brevity and felicity. The former flow from a violation of a general duty, the latter from a breach of a special obligation. * * * He and his sureties entered into a specific contract with the state, for the benefit of those interested, that he and his deputy would faithfully perform each duty of

his office and his failure in such respect is a breach of that contract. If this is not a case in which the bond may be enforced, it is difficult to imagine one in which official bonds may be made available. We, therefore, conclude that this action is not prescribed by one year."

In Fox vs. Thibault *et al.*, 33rd Ann. 32, being an action on the bond of the recorder of the parish of Plaquemines for damages for his failure to include certain mortgages in a certificate issued by him, Mr. Justice Fenner, as the organ of the court, said:

"The defenses urged by the defendant" (defendants) "are the following, viz: 1st. The prescription of one year, based on the hypothesis that the action is one for damages resulting from a *quasi* offense. We are not concerned here with the question as to whether defendants breach of duty was or was not technically a *quasi* offense. The action is on the bond and therefore *ex contractu*, to which the prescription invoked is not applicable."

And to the same effect is the decision in Weintz *et al.* vs. Kramer *et al.*, 42 Ann. 35, where the action was brought on the bond of a notary for damages resulting from his failure to embody the necessary recitals in his process of a nuncupative will by public act. The meaning of these decisions is admitted by the respondent judges, but, in the majority opinion, it is said that they are entirely at variance with the previous jurisprudence, and, in support of this view, a number of adjudged cases are cited. The first are those of Semple vs. Buhler, 6 N. S. 665 and Fish vs. Bowder *Ib.* 691. But, the opinion overlooks the fact that, in deciding the case of Brown vs. Gunning's Curatrix, in the 19th La., the court especially refers to the cases of Semple vs. Buhler and Fish vs. Bowder, and says that they were suits against sheriffs, individually, and that if they had been actions on the official bonds of those officers the decisions would, probably, have been different. And what was said of those cases, may, with equal, and in some instances, with, perhaps, greater propriety, be said of the cases of Balfour vs. Bowder, 6 N. S. 708, Emmerling vs. Graham, 14 Ann. 389, Taylor & Raddin vs. Graham, 15 Ann. 418, City vs. Southern Bank, 31 Ann. 566, Caillouet vs. Franklin, 32 Ann. 220, and Knoop, Hanneman & Co. vs. Blaffer, 39 Ann. 23, none of which were actions on bonds and in one or two of which there were no bonds upon which actions could have been brought. In fact, the only case to which our attention is called which appears to be at variance with the doctrine

announced in Brown vs. Gunning's Curatrix, and affirmed in Brigham vs. Bussey, and in the cases since decided, is that of Harvey vs. Waldon, 23rd Ann. 162, which had been, in effect, disposed of when the question of prescription was mentioned, without reference to the issues now under consideration, and it was said that even if the other defenses, which had already been held sufficient, had not been so, the plea of prescription, it being an action on a sheriff's bond, would have been good. If, therefore, the issuance of the certificate containing the erroneous recital that Mrs. Baker had not alienated the property in question was a breach of the obligation of the bond which the recorder had given, the suit predicated upon such breach arises *ex contractu,* and is not barred by the prescription applicable to *quasi* offenses, even though the act constituting the breach, considered by itself, may have been a *quasi* offense.

It is said that the law does not impose upon the register of conveyances the duty of issuing certificates of non-alienation, and hence, that the issuance of an erroneous certificate of that description is not a breach of the obligation of the bond given for the faithful discharge of his duties. The law directly applicable to the subject is to be found in C. C. 2257, which reads as follows, to-wit:

"It shall be the duty of the register of conveyances of the parish of Orleans to keep his office in as central a situation as possible, in a brick house, and to keep his record book open to the inspection of all persons, and to deliver to them certificates of the inscriptions that may have been made, if they require the same."

Under this law, it was plainly the duty of the register, when called on for the certificate, to have included in it the inscription of the act of sale, of February 10, 1894, from Mrs. Baker to Otto Walther. Instead of doing so, he certified that there was no such inscription, which was a breach of his duty and of the obligation of the bond which he had given, agreeably to R. S. 3153, for the faithful performance of the duties imposed upon him by law. The proposition that the applicant must designate the particular inscription of which he wishes a certificate issued is not sustained by the law which has been quoted, as generally understood and as construed with other provisions. Revised Statutes 2528 requires notaries and sheriffs in the parish of Orleans, before passing any act of sale, to demand a certificate from the register of conveyance showing that the vendor has not alienated

the property, said certificate to give a clear description of said property, and fixes the fee of the register; and the following section imposes a penalty upon any notary or sheriff who neglects to obtain such a certificate before making a sale. It is true that these sections apply, in terms, only to the making of *sales* by the officers mentioned, and do not refer to the issuance of certificates for the purposes of acts of mortgage; but they show the common understanding that non-alienation certificates may be demanded of the register of conveyances. And the article of the Code gives to any citizen the right to demand such a certificate for any purpose.

It is further said that the indices are component parts of the records of the conveyance office, as much so as the books in which the conveyances are registered, and that, if a particular incumbent of the office fails to enter in the proper index, a conveyance duly registered in one of the books his successor, who is guided by the indices in any research made by him with a view to the issuance of a certificate of non alienation, should not be held liable, when, failing to find such conveyance in any index, he fails to certify its existence. It must be admitted that the situation is not free from difficulty, since, if the register is unable to rely upon the indices which he finds in his office, the only method by which he can assure himself, and those relying on him for the information, that property acquired fifty years ago has not been alienated, is by turning over the leaves of all the conveyance books from the date of the acquisition of the property. The system, such as it is, has, however, been in operation for a great many years, and, whilst recorders have, in some instances, been held liable for failure to report mortgages inscribed against property, because of their non-appearance in the indices, our attention has not been called to any similar case concerning conveyances. And, whatever may be the difficulty, the fact remains that the indices form only part of the records of the office whilst the books themselves form the other part, and if the register certifies that no conveyance of particular property appears in the records of his office, when, in point of fact, a conveyance is inscribed in the books, though not entered in the index, he certifies to something that is not true, and he must bear the consequences. In the instant case, the certificate issued by the register reads as follows:

Gordon vs. Stanley.

"Office of the ⎱ State of Louisiana,
"Register of Conveyances. ⎰ Parish of Orleans.
    "Note.—The register of conveyances will not be responsible for the record of any acts of sale inscribed in Book No. 17 of this office; the same having been lost or stolen previous to his taking possession of the office of register of conveyances.

"New Orleans, July 1, 1898.

    "The undersigned register of conveyances for the parish of Orleans hereby certifies that, according to the records of his office, it does not appear that the following described property has been alienated by Martile Jones, widow of Jeffrey Baker."

    And then follows a description of the property and a statement of the date of its acquisition, with the book and folio in which the same is registered.

    If the register had confined himself to saying that, according to the *indices* of his office, no alienation appeared, the parties to whom the certificate was issued would have governed themselves accordingly. But, the certificate, as issued embraced the books as well as the indices, and, though true as to the latter, was untrue as to the former.

    Another point suggested on behalf of the defendant is, that there were two acts of mortgage, the one, of July 1st, and the other, of August 3rd, and that, as the only certificate obtained was that issued at the date of the first act, the register is not responsible with regard to the second. The evidence shows that the applicant, through his attorney, acted in both transactions on the faith of the same certificate. Of course, in so doing, he took the risk of the mortgagor's having alienated the property between July 1st and August 3rd, but the register is responsible for the certificate issued, as of its date, whether it was used on that day or later.

    The law of the case is, therefore, with the applicant. Upon the facts, a somewhat different condition is presented. But one witness was examined as to the value of the property supposed to have been mortgaged, and it is by no means clear, from his testimony that, if sold under the hammer, it would bring the amount which the applicant claims. Further than this, there is included in the record of the suit against Mrs. Baker, the *alias fi. fa.* already referred to, from which it appears that the applicant has seized some property, which

will, presumably, be appropriated to the reduction of his claim. Under these circumstances, we find it impossible even to approximate the loss which he has sustained through the fault of the defendant, and, dealing with the case, as we are authorized to do by the constitution, that is to say, as if it had been brought here directly by appeal, we feel constrained to dismiss it as in the case of non-suit.

It is, therefore, ordered, adjudged and decreed that the judgment herein rendered, by the court of appeal and the district court, be amended in so far as that the demand of the plaintiff, Charles Gordon, is dismissed as in case of non-suit, instead of being finally rejected, said plaintiff to pay the costs of the district court, and the defendant, John E. Stanley, to pay the costs of the appeal and of this application.

BREAUX, J., dissents.

Rehearing refused.