**DON GEORGE, Inc., et al.**

v.

**PARAMOUNT PICTURES, Inc., et al.**

**Civ. A. No. 3050.**

United States District Court
W. D. Louisiana, Shreveport Division.

Oct. 11, 1956.

LeRoy Smallenberger, Smallenberger, Eatman & Morgan, Joseph H. Jackson, Jackson, Smith, Mayer & Kennedy, Shreveport, La.; Keith M. Pyburn, Washington, D. C., for plaintiffs.

W. Scott Wilkinson, John M. Madison, Wilkinson, Lewis, Wilkinson & Madison, Shreveport, La., Gibbons Burke, Chaffe, McCall, Phillips, Burke & Hopkins, New Orleans, La., for defendants.

BENJAMIN C. DAWKINS, Jr., Chief Judge.

We are called upon here to reconsider what was considered, but not decided, by the late Judge Porterie of this Court, on September 18, 1951, at 111 F.Supp. 458, as to defendants' plea of prescription. With all due respect and deference, we find ourselves unable to agree with some of the statements made in that opinion, for the reasons hereinafter noted.

This long-pending action, filed on August 18, 1950, is for treble damages, and attorneys' fees, under the Sherman and Clayton Anti-Trust laws, particularly under 15 U.S.C.A. § 15. For the greater part of the time, the attorneys have occupied themselves inconclusively with companion cases, involving the same issues, in the State Court. See, e. g., Loew's, Incorporated v. Don George, Inc.,

227 La. 127, 78 So.2d 534. Briefly, the facts alleged here are as follows:

From May 17, 1942, until January 1, 1947, the Davis Theater, a motion picture house in Bossier City, Louisiana, was owned and operated by George Brothers Theaters, a partnership composed of Don George and Darrell George, Louisiana citizens. On the latter date, Don George, Inc., a Louisiana corporation, purchased all assets of the partnership except its part of the cause of action here sued upon, and operated the theater to the date the suit was filed. Since then, we understand, although it is not of record, the corporation has sold its theater interests, and Don George has died.

The corporation and partners claim damages for the respective terms of their ownership, on the ground that defendants, in dealing with motion picture films,

"* * * have during the period covered by this suit engaged in a conspiracy to restrain and monopolize, and have restrained and monopolized, interstate trade and commerce by the following means:

"I. Price Fixing

A. Vertical

B. Horizontal

"II. Discriminatory and Unreasonable Clearances and Runs

"III. Pooling Agreements and Joint Ownership

"IV. Formula Deals, Master Agreements, and Franchises

"V. Block-Booking

"VI. Discrimination on Contract Provisions

"That this conspiracy was carried on on a national scale, and your plaintiffs were adversely affected and damaged in their business and property by this conspiracy * * *."

Plaintiffs allege that, because of this monopoly, they were forced to deal with defendants in procuring films for exhibition at their theater, and were damaged by defendants' unlawful conduct to the extent of $124,000, being the net loss of profits they would have realized had it not been for these monopolistic practices. Hence, they sue defendants for treble that amount, or $372,000.

Named as defendants are Paramount Pictures, Inc., Paramount Film Distributing Corporation; United Paramount Theatres, Inc.; Paramount Gulf Theatres, Inc.; Saenger-Ehrlich Enterprises, Inc.; Radio-Keith-Orpheum Corporation; RKO Radio Pictures, Inc.; Warner Brothers Pictures, Inc.; Warner Brothers Pictures Distributing Corporation; United Artists Corporation; Columbia Pictures Corporation; and Columbia Pictures of Louisiana, all corporations.

Plaintiffs further allege that all defendants except Saenger-Ehrlich, Inc., and Paramount Gulf Theatres, Inc., were adjudged in violation of the Federal antitrust laws, on a nation-wide scale, in the matter entitled United States v. Paramount Pictures, Inc., Equity No. 87–273 on the docket of the United States District Court for the Southern District of New York, 66 F.Supp. 323; affirmed in part, and reversed in part, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260. This adjudication, they claim, is *prima facie* evidence as to the verity of their allegations in the present action.

Before answering, defendants filed motions to dismiss on the ground that, according to the complaint, plaintiffs' cause of action has prescribed, since it shows that more than one year elapsed from the time the last damage was inflicted and the date upon which the suit was filed. Defendants stand on Arts. 3536 and 3537 of the LSA–Civil Code, relating to tort and damage actions, as being applicable. This is the motion Judge Porterie considered, but did not decide, having referred it to the merits. He thought the question ought to be "for the jury".

For their part, plaintiffs contend that their action is in quasi-contract, not in tort, and prescribes in ten years, not one, under LSA–Civil Code Article 3544. They further contend that, pursuant to Section 5 of the Clayton Act, 15 U.S.C.A. § 16, the running of the Statute of Limitations, or prescription, was suspended

during the pendency of the injunction suit brought by the Government in the Southern District of New York against all but two of the defendants here, thus keeping this cause of action alive notwithstanding the lapse of time which might otherwise bar their claims.

■ We have studied the able briefs and have read all of the authorities cited, as well as others found in our own research. Unlike Judge Porterie, who could not bring himself to decide whether the one-year or ten-year prescription is applicable, we have had no difficulty in concluding, on reason and precedent, that the suit is purely delictual, the alleged damages having been occasioned by conduct which can be classified, under Louisiana law, only as offenses or quasi-offenses, subject to the one-year prescription of Civil Code Articles 3536 and 3537.

■ In reaching this conclusion, we also differ necessarily with Judge Porterie in our conviction that the task of ascribing proper legal characterization to the claims, and applying the pertinent period of prescription, belongs to the Court, not the jury—as a matter of law and not of fact. While, as he noted (prematurely, because answers had not been filed at that time), there are disputes in the pleadings on the basic facts, we are not concerned with those factual differences at this point. As we conceive our duty, in passing upon the question now presented, we must take as true all of the material allegations of fact contained in, and characterizing, the complaint, without regard to denials or affirmative allegations in defendants' answers. In other words, we now accept, for present purposes, the totality of plaintiffs' factual allegations.

■ No period of prescription, for bringing treble damage suits, is contained in the Sherman and Clayton Acts. Therefore, the State law on that subject must be followed, Chattanooga Foundry & Pipe Works v. Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241, cf. O'Sullivan v. Felix, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980; Copp v. Louisville & N. Ry.

Co., C.C.E.D.La.1892, 50 F. 164; Loggins v. Steel Const. Co., 5 Cir., 1942, 129 F.2d 118.

Article 3536, in pertinent part, reads as follows:

"*Tort, possessory and damage actions.*—The following actions are also prescribed by one year:

"That for injurious words, whether verbal or written, and that for damages caused by animals, or resulting from offenses or quasi offenses."

Article 3537, as here applicable, provides:

"*Commencement of running of period.—Tort and possessory actions.* —The prescription mentioned in the preceding article runs:

\*    \*    \*    \*    \*

"And in the other cases from that [day] on which the injurious words, disturbance or damage were sustained."

Article 3544 reads as follows:

"*Personal actions.*—In general, all personal actions, except those before enumerated, are prescribed by ten years."

This is the Article applicable to actions on contracts and those which are *quasi ex contractu*.

As far back as 1913, in American Tobacco Company v. People's Tobacco Company, 204 F. 58, 60, the Fifth Circuit Court of Appeals approved a jury charge by then District Judge Rufus E. Foster, of the Eastern District of Louisiana (later Chief Judge of the Circuit), which stated, " 'It is the law of Louisiana that acts, such as these [in violation of the Sherman Act], are prescribed in one year after they occur.' " The appellate Court concluded that " \* \* \* this charge \* \* \* is the correct view of the question of prescription." Plaintiffs argue that the question of whether the one-year period was applicable in that case was unimportant to the position of that plaintiff, and was conceded by its counsel. We have noted, however, that the concession was made by some of the

ablest lawyers in Louisiana legal history, who hardly would have done so had they not been convinced that it was correct; and the Court itself agreed.

Again, in 1917, in Caillouet v. American Sugar Refining Company, D.C., 250 F. 639, also a treble damage suit under the Sherman Act, Judge Foster held that such an action was not *sui generis,* did not arise in quasi-contract, and was *ex delicto* in its nature. Earlier in the same year, in Bluefields S. S. Company v. United Fruit Company, 243 F. 1, a case which had its origin in Louisiana and in which able counsel from the State participated, the Third Circuit reached the same conclusion. No cases are cited, or have been found, to the contrary.

■■ Early in the Louisiana jurisprudence, its Courts spelled out the essential difference between quasi-contracts and quasi-offenses. In City of New Orleans v. Southern Bank, 1879, 31 La.Ann. 560, Chief Justice Manning, speaking for the Louisiana Supreme Court, said:

"The characteristic therefore of offence or quasi-offence is that the act, from which the obligation arises, is *unlawful. The marked distinction then between a quasi-contract, and an offence or quasi-offence, is, that the act which gives rise to a quasi-contract is a lawful act and therefore is permitted; while the offence is unlawful, and therefore is forbidden.*

\* \* \* \* \*

"*The distinction between damages ex delicto and ex contractu is, that the latter ensue from the breach of a special obligation, and the former from the violation of a general duty.* Marcade says:

"Remarquons bien que c'est de la violation d'un devoir proprement dit qu'il s'agit, d'un de ces devoirs generaux existant au profit de toutes personnes, et non pas de la violation du devoir existant specialement de telle personne determinee a telle autre determinee, et qui constitue l'obligation. Explic. du Code Napoleon art. 1382."

[Translation: Let us note well that properly speaking the matter arises from the violation of a duty, one of those duties which exist generally for the benefit of *everyone,* and not from the violation of a duty *existing specially* on the part of *one certain person in favor of another certain person and which constitutes an obligation.*] (Emphasis supplied.)

In Lagrone v. Kansas City So. Ry. Co., 1925, 157 La. 559, 102 So. 669, 670, the Court again emphasized the basic distinction between legal rights resulting from violation of a *special* duty, and those arising from transgression of a *general* duty, the former being *ex contractu* and the latter *ex delicto.* The suit was for damages for failure to furnish railroad cars, in violation of the Interstate Commerce Act. The Court held:

"It is not claimed that plaintiffs were under any special contract to furnish the cars; but that the duty arose by virtue of defendant's *general obligation* to furnish cars under the Interstate Commerce Act (U.S. Comp.St. § 8563 et seq. [49 U.S.C.A. § 1 et seq.])

"Hence defendant contends that its alleged failure to furnish cars was a *quasi offense,* and its liability for damage, if any, extinguished by the prescription of one year. *On the other hand, plaintiff contends that the damage arose from the breach of a quasi contract, and is extinguished only by the prescription of ten years.*

"I.

"In Gordon v. Stanley, 108 La. 182, 32 So. 531, this court said:

"'Whilst it is true \* \* \* that mere error, negligence, or imprudence, resulting in injury to another, may be a quasi offense, it is also true that one may *by contract* bind oneself to compensate such injury; and, because the sufferer may

have an action in damages as for a quasi offense, it does not follow that he should be denied the right to sue on his contract, *if he has one,* and prefers that remedy.' (Italics ours.)

"Hence it has been held that where one has bound himself by special contract, *i. e., has given bond,* for the performance of duties otherwise imposed upon him by law, the party injured may sue *upon the contract,* instead of on the *tort;* and, if he does so, his action is not prescribed except by the prescription of 10 years. Gordon v. Stanley, 108 La. 182, 32 So. 531; Weintz v. Kramer, 44 La.Ann. 35, 10 So. 416; Fox v. Thibault, 33 La.Ann. 32; Brigham v. Bussey, 26 La.Ann. 677; Brown v. Gunning's Curatrix, 19 La. 462; Poydras v. Patin, 5 La. 327.

"On the other hand, it has been held that where the action for damages was not upon the bond or *contract,* but *merely upon the breach of duty as imposed by law, the damages arose ex delicto, and were extinguished by the prescription of one, year.* Knoop v. Blaffer, 39 La.Ann. 23; Caillouet v. Franklin, 32 La. Ann. 220; New Orleans v. Southern Bank, 31 La.Ann. 566; Harvey v. Walden, 23 La.Ann. 162; Taylor v. Graham, 15 La.Ann. 418; Edwards v. Turner, 6 Rob. 382; Balfour v. Browder, 6 Mart., N.S., 708; Fisk v. Browder, 6 Mart., N.S., 691; Semple v. Buhler, 6 Mart., N.S., 665. See authorities reviewed, in Gordon v. Stanley, supra.

"II.

"*But it has never been held that the mere fact of the law imposing upon a person some duty towards the public operates to create a quasi contract between such person and each individual member of the public. And it is of the essence of a contractual obligation (contract or quasi contract) that it be due to some particular person as distinguished from the public in general.*

R.C.C. art. 1765. [Emphasis supplied.]

\*　　\*　　\*　　\*　　\*

"In the case before us, the defendant's obligation to furnish cars was to the public *in general,* including plaintiff, and arose solely from the law; neither that law itself, nor any act of defendant, placed the latter under any *special* obligation to plaintiff. Our conclusion is that the plea of prescription of one year was properly sustained by the trial judge." (Emphasis supplied.)

To the same effect are Sims v. New Orleans Railway & Light Company, 1914, 134 La. 897, 64 So. 823, and National Park Bank v. Concordia Land & Timber Company, 1925, 159 La. 86, 105 So. 234.

In Loggins v. Steel Const. Company, 5 Cir., 1942, 129 F.2d 118, 120, the Court had before it a claim that arose in Louisiana for unpaid overtime compensation, and an equal amount as liquidated damages, under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. A plea of one year's prescription, based on Articles 3534 (for unpaid wages) and 3536 (for damages), was filed. Speaking for the Court, with respect to plaintiff's contention that a quasi-contract was involved, Judge Hutcheson said:

"But if we could agree with appellant that the suit is not for wages we could not at all agree that it is a suit in quasi contract and within the 10 year prescription of Article 3544. We would be bound to hold that if not a suit for wages it was in tort for damages for a crime or a quasi crime, that is, for the violation of the positive provisions of Section 7 and therefore within the one year prescription of Article 3536. In O'Sullivan v. Felix, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980, the Louisiana one year offense limitation was applied to a suit for damages under the Civil Rights Act. In McCaleb v. Fox Film Corp., 5 Cir., 299 F. 48, 50, this court applied Article 3536 to a claim for copyright in-

fringement saying: 'Under Louisiana law the word "quasi-offenses" has the same meaning as the word "torts" has in common-law jurisdictions. The infringement of a copyright is a quasi-offense or tort, [and is barred under Article 3536].'"

In a concurring opinion, Judge Sibley observed:

"* * * I am of opinion that an action for unpaid minimum wages is one for wages, and that the damages by doubling them are incidental, as interest would be; so the Louisiana Civil Code, Art. 3534, which deals alone with 'actions * * * of workmen * * * for the payment of their wages', would be applicable. But where, as here, the action is for 'overtime compensation' and damages, due because a prohibitory statute has been violated, it is not one for wages, but for a quasi offense, or tort, under the Louisiana Civil Code, Art. 3536. Both articles happen to name one year as the limitation, but it may be otherwise in other states. * * *

"The federal statute limiting suits for penalties, 28 U.S.C.A. § 791, does not apply, for private compensation rather than public punishment is the aim here, *as in the case of triple damages under the Antitrust Act,* 15 U.S.C.A. §§ 1–7, 15 note, Chattanooga Foundry & Pipe Works v. Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241, or the artificially fixed damages under the Copyright Act, 17 U.S.C.A. § 1 et seq., Brady v. Daly, 175 U.S. 148, 20 S.Ct. 62, 44 L.Ed. 109, or reparation under the Interstate Commerce Act, 49 U.S. C.A. § 1 et seq., Meeker v. Lehigh, 236 U.S. 412, 35 S.Ct. 328, 59 L. Ed. 644, Ann.Cas.1916B, 691.

"We must look to the State statutes for the applicable limitation, that here applying being the prescription of actions for quasi offenses. I concur in the affirmance, but think it ought to be placed

squarely on that statute.'" (Emphasis supplied.)

It is clear, we believe, that these authorities are controlling and decisive of the question here, and that plaintiffs' action is in tort, not quasi-contract. They do not sue upon any *special* obligation created by law, or arising for their benefit from their contracts or relationships with defendants. Indeed, they claim entitlement to recovery, not because of but in spite of these contracts, which they repudiate as unlawful *per se.*

The Sherman and Clayton Acts, in prohibiting combinations, conspiracies or other devices for achieving monopolistic advantage, operate in favor of the general public, including plaintiffs. They do not create special rights in favor of plaintiffs, or any other specific individuals or class. They do establish *general* rights running to "*Any* person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws * * *." 15 U.S.C.A. § 15. It necessarily follows that actions such as this, to recover damages (trebled) resulting from violation of the Acts, are delictual, not contractual, in their nature; hence the one-year prescription of Articles 3536 and 3537 must be applied.

Plaintiffs rely chiefly on Kramer v. Freeman, 1941, 198 La. 244, 3 So.2d 609, 611. In that case certain money and jewelry had been wrongfully taken from plaintiff by his wife and mother-in-law. He sued them for the return of his property, or, alternatively, if it had been disposed of and could not be returned, for its value. Defendants pleaded the one-year prescription of Article 3536 which was overruled by the Court in the following language:

"In delving for the correct solution of this problem, it is necessary, at the outset, to determine whether the acts committed by the defendants, which form the basis of the cause of action, afforded to the plaintiff two remedies—one in tort and one in quasi contract. There can be no doubt that the acts complained

of were offenses within the meaning of Article 2315 of the Civil Code and that the plaintiff had a cause of action to recover all of the damages he suffered as a result of these torts. In addition to this, the wrongful taking and detention of plaintiff's property by the defendants imposed upon them an implied contractual obligation to return it and the plaintiff had the right to proceed in an action ex contractu to compel them to do so. See Articles 2292, 2293, 2294 and 2301 of the Civil Cole; Morgan's Louisiana, etc., Ry. Co. v. Stewart, 119 La. 392, 44 So. 138; Ducros v. St. Bernard Cypress Co., 164 La. 787, 114 So. 654; Roney v. Peyton, La.App., 159 So. 469; Smith v. Phillips, 175 La. 198, 143 So. 47; Bryceland Lumber Co. v. Kerlin, 143 La. 342, 78 So. 482; Bell Lumber Co. v. Stout, 134 La. 987, 64 So. 881; Martin v. Texas Co., 150 La. 556, 90 So. 922; Liles v. Barnhart, 152 La. 419, 93 So. 490; Liles v. Producers Oil Co., 155 La. 385, 386, 99 So. 339, and Carter-Allen Jewelry Co. v. Overstreet, 165 La. 887, 116 So. 222. Article 2301 of the Civil Code provides:

" 'He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it.' "

The clear distinction between that case and this one is readily apparent. There was a suit for restoration of the *specific things* wrongfully acquired, pursuant to Article 2301. Here, by contrast, we have an action for money damages (trebled), which does not seek the return of specific property wrongfully taken from plaintiffs. They sue, instead, for profits which *would* or *might have been* realized, had it not been for defendants' wrongful conduct. In other words, plaintiffs sue, not for the return of property which once was theirs and was wrongfully taken from them by defendants, but for profits which they say *would have been*

theirs, but for defendants' monopolistic practices.

That this is surely the maximum reach, the entire compass, of their case is conclusively shown by the method they have used to establish and calculate their damages. Article 35 of their original complaint reads as follows:

"35.

"That during the year January 1, 1949, to January 1, 1950, your petitioner was able to obtain some first-run pictures from the defendants. Although the conspiracy had not yet run its course, and although the defendants did not fully comply with the Supreme Court's decision, the Davis Theater for the first time made a profit on film exhibition. The over-all profit made by the theater for this period was $21,329.15.

"That as a direct and proximate cause of the operation [of] said unlawful agreements and conspiracy against the plaintiffs' business, plaintiffs have been subjected to net loss of earnings in excess of $124,-000.00 during the period covered by this suit, and that the plaintiffs' total damage, being treble damages and provided in the 'Sherman Act' are in excess of $372,000.00."

In Iberville Land Company v. Amerada Petroleum Corporation, 5 Cir., 1944, 141 F.2d 384, 385, Judge Lee, as organ of the Court, thoroughly canvassed the Louisiana jurisprudence on this question of quasi-contracts versus offenses or quasi-offenses. There plaintiff claimed damages from defendant for conducting seismograph operations on plaintiff's lands without its knowledge and consent. The suit was filed more than one year after the allegedly wrongful acts occurred, and more than one year from the time when plaintiff knew, or should have known, of the trespass. Defendant pleaded the one-year prescription of Article 3536, which was sustained by Judge Borah of the Eastern District of Louisiana. On appeal, as in the District Court, the plaintiff-appellant relied on Article

2301 of the Code claiming that its suit was in quasi-contract. The judgment was affirmed, the Court stating:

"The Codal Article relied on by appellant calls for the restoration of the specific thing wrongfully acquired. If the thing thus acquired exists and can be restored, the plaintiff either may sue for damages for the wrongful act by which he has been deprived of the thing, or he may sue for the restoration of the thing. One is an action in tort, or for a quasi offense; the other is an action in quasi contract. *Whether this suit is in tort or in quasi contract may only be answered by an analysis of the averments of the bill of complaint descriptive of the cause of action and the character of the relief prayed.*" (Emphasis supplied.)

It cannot be gainsaid, we think, that the present complaint—the cause of action it asserts and the character of the relief it prays for—constitutes an action in tort, for offenses or quasi-offenses. Therefore Articles 3536 and 3537 of the Code must be applied.

Plaintiffs also rely on Dawkins v. Mitchell, 1922, 149 La. 1038, 90 So. 396, 398. There a shareholder of an insolvent national bank brought suit against the bank's directors, upon grounds of alleged misconduct with respect to its affairs, from which he sustained damages when his stock became worthless. His cause of action arose under Section 5239 of the United States Revised Statutes, 12 U.S.C.A. § 93 which specially provided for liability on the part of bank directors "for all damages which the [banking] association, its shareholders, or any other person, shall have sustained in consequence of such violation." Some of the defendants pleaded the one-year prescription of Article 3536, more than one year having elapsed from the time the bank failed until the suit was filed. The Court, after first holding that the directors were agents of the bank, charged under the law with an implied trust to use its funds only for the pur-

poses permitted by law, and to preserve them for its creditors and stockholders, concluded that:

"* * * The obligation which the directors incurred in favor of the bank was a *special* one, due to it in particular, and to the stockholders. It was not a *general duty* due to every one. They were elected by the stockholders to administer the affairs of the bank and accepted the trust.

"Causes of action for damages which arise from the breach of such a *special* duty due by the directors to the bank, and constituting an obligation, are not subject to the prescription of one year applicable to causes of action arising from offenses and quasi offenses provided by article 3536 of the Civil Code, which involve the breach of a *general* duty, but are subject to the prescription of 10 years provided by article 3544 of that Code, to which all personal actions are subject, except those to which a different prescription is made to apply. * * *

"* * * still we should feel constrained to hold that a fiduciary relation existed between a shareholder of the bank and the members of the board of directors, and that the duty which was due the shareholders was a *special* duty, and not a *general* one due *everybody*. The breach of that duty would be a *breach of trust;* and therefore damages arising therefrom would be governed, not by the prescription of one year, but by that of 10 years." (Emphasis supplied.)

Considering the language we have emphasized, we think plaintiffs can find no comfort in this decision, for the defendants here surely owed plaintiffs no special duty. Their liability arose, if at all, from the general criminal and civil prohibitions of the Sherman and Clayton Acts, creating duties which are owed to "everybody". Therefore, we find and hold that the one-year period of prescription, provided for by Articles 3536

and 3537, must be applied to plaintiffs' claims herein.

 This holding, however, does not fully resolve the problems confronting us, because we must consider the possible pertinence of 15 U.S.C.A. § 16, reading, at the time this suit was filed, as follows:

"A final judgment or decree rendered in any criminal prosecution or in any suit or proceeding in equity brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any suit or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: *Provided,* This section shall not apply to consent judgments or decrees entered before any testimony has been taken.

"Whenever any suit or proceeding in equity or criminal prosecution is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, the running of the statute of limitations in respect of each and every private right of action arising under said laws and based *in whole or in part on any matter complained of* in said suit or proceeding shall be *suspended during the pendency thereof.*" (Emphasis supplied.)

We do not have before us, in this record, the decrees, or minutes of the proceedings, in the Government injunction suit in the Southern District of New York. Until certified copies of these, and any other pertinent matters, are placed in this record, we cannot pass upon the effect, if any, of that action in "suspending" the running of the one-year period of prescription applicable here under Louisiana law. By reason of the same incompleteness of the record, we cannot determine whether the "consent" decrees entered in that case did or did not affect the question of prescription. Probably there are other matters directly or indirectly involved which have not occurred to us, and have not been brought to our attention.

Plaintiffs have not briefed this question at all, and defendants have done so only sketchily. We do not know, for example, whether plaintiffs are really serious in their allegation that during 1949 the "conspiracy had not yet run its course, and * * * defendants did not fully comply with the Supreme Court's decision * * *". Neither can we tell from the complaint whether, as the result of this, plaintiffs suffered any damage during that year.

For these reasons, therefore, we are returning the case to the calendar, without final action upon the plea of prescription, in order that these matters, and any others that are pertinent to the issue, may be settled. Accordingly, the Clerk is to place the case upon our next regular motion calendar, for further argument by counsel.