[The Chief Justice was absent on leave during this term.]

---

### No. 49.

### WALLING HEIRS VS. A. S. MOREFIELD.

A defective and insufficient description of the property sold, in the sheriff's advertisement is cured by the prescription of five years as established by Art. 3543, C. C. Previous Decisions affirmed.

The title of the insolvent is not divested by the *cessio bonorum*, and his heirs are not estopped from claiming the property surrendered, when it has not been disposed of by the syndic. 11 An. 158.

The purchaser who knew the defect in the title of the property he purchased and, owing to such defect, got the property for much less than its value, cannot be considered as a purchaser in good faith, in the legal sense of the word, and is not protected by the prescription of ten years.

The prescription of three years does not apply to the rents and revenues of property claimed in the petitory action, against a purchaser in bad faith.

A PPEAL from the First Judicial District Court, parish of Caddo. *Taylor, J.*

---

*J. W. Jones* and *A. B. Slattery* for Plaintiffs and Appellees:

There is but one question in this case, and that is the prescription of ten years. To support the prescription of ten years; the title to the immovable must be apparently good, and of a character to induce the belief on the part of the possessor that the title is perfect. A title defective on its face will not be sufficient; otherwise, where the defect proceeds from circumstances or evidence *de hors* the instrument.

Walling Heirs vs. Morefield.

Where one assumes to sell without title, or without disclosing the defects in his title, the vendee, in good faith, though holding *a non domino*, may plead the prescription of ten years. Otherwise, where the vendor sells only his right or interest—shows what it is, and declines to warrant generally the title, thus bringing home to the vendee a knowledge of his title.

A possessor in good faith is one who has just reason to believe himself master of the thing he possesses, although he may not be in fact. In other words, the purchaser must have no reason to doubt that his title was good at the time of the purchase. If the purchaser has good reason to doubt the validity of the title at the time of the purchase, the purchaser is then a possessor in bad faith.

*Geo. Williamson, Land & Land,* and *H. H. Childers* for Defendants and Appellants:

First—Where the description of the thing seized and sold at sheriff's sale is insufficient to identify it, there is no sale and no title passes. 26 An. 156; McDonough vs. Gravier. 9 L. 542; McGary vs. Dunn, 1 An. 338; Gales vs. Christy, 4 An. 293; 5 An. 133, 255; 7 An. 21, 296; 12 An. 251, 838.

Second—Such a defect is radical, and not an informality prescribed by five years. C. C. 3543; 4 An. 249; 6 An. 407; 7 An. 113; 22 An. 492.

Third—An insolvent and his heirs are bound by the insolvent's oath to his schedule. Plaintiffs' ancestor having made a surrender under the State insolvent laws and filed a sworn schedule of all his property, which did not include the lot in dispute, they are estopped from asserting the ownership of said insolvent. Pardo vs. Pardo, 26 An. 364. All the debtor's rights and property pass to his creditors, whether placed on the schedule or not. He can neither sell nor mortgage the property, and loses the *jus disponendi,* which he cannot regain without the payment of his debts in full. See cases cited in brief.

Fourth—Defendant had been in open, peaceable and public possession as owner, under a recorded title, for more than ten years before this suit was instituted. He had just reason to believe that he was deriving title from the true owner. Exclusion of warranty is not evidence of bad faith in the vendee. Templet vs. Baker, 12 An. 658. The prescription of ten years should have been sustained.

Fifth—If the rents claimed in the petition are damages for trespass to real estate, the prescription of one year applies. 2 N. S. 24; 5 M. 257, 65. If said rents are the hire of an immovable, the prescription of three years applies. C. C. 3538; 24 An. 73; 33 An. 621.

The opinion of the Court was delivered by

POCHÉ, J. This is a petitory action for the recovery of a town lot in the city of Shreveport.

Plaintiffs claim as the legal heirs of James Walling, who had purchased the property in 1843, at a sheriff's sale in the suit of James Walling vs. T. T. Williamson.

Defendant claims title from T. T. Williamson by a sale through Williamson's agent in 1870, and also pleads the prescription of ten years' possession.

He also alleges the nullity of Walling's purchase at the sheriff's sale of June 5, 1843, on the ground of the vagueness and insufficiency of the description of the property seized, advertised and sold at the sheriff's sale.

And he further defends that, by a surrender of his property, made

by Walling under the insolvent laws of the State in 1852, he·divested himself of any title, if he had any, to the property in suit; and that his heirs are thereby estopped from setting up any title to the same. ·

The judgment of the District Court was in favor of plaintiffs, recognizing their title to the property, allowing them rent for the same at the rate of five dollars a month from January 1st, 1871, until the property is delivered to them, subject to a credit of $324 for taxes .paid by defendant, whose right to sue for the value of the improvements made by him on the property was specially reserved.

Defendant appeals, and has filed in this Court the plea of prescription of one and three years in bar of plaintiff's right to recover rent on the property.

1st. As to the insufficiency of the description of the property seized in the suit of Walling vs. Williamson, the record shows that, at the time of the seizure, Williamson was one of the seven original members of the Shreveport Town Company, owning the lands composing the site of the present city of Shreveport, which lands had been acquired from the United States by Larkin Edwards, whose title had been transferred to the Town Company, a corporation created under the laws of the State. In 1842, Walling obtained a judgment against Williamson on his confession, with a stay of execution until January, 1843.

In execution of that judgment, the sheriff seized " T. T. Williamson's undivided one-seventh of the town of Shreveport," together with other property of the defendant in said town, and on June 5th, 1843, the undivided seventh of Williamson was adjudicated to Walling, whose title was subsequently recorded in the proper office.   While this description is unquestionably vague and perhaps uncertain, we are not prepared to say that it was too vague as not to enable the property to be identified.   A reference to the act of incorporation of the Shreveport Town Company, followed by an inspection of the conveyance office, showing what portion of its domain had been previously sold, and, therefore, what portion remained to the incorporators or their successors, would, in our opinion, have given a correct idea of the quantity, quality and value of the property seized.   The interest of Williamson in the town was undivided, and it is difficult for us to conceive how else it could have been more minutely described, without encumbering the proceedings and the advertisement.   11 An. 87; 12 An. 252.

But, conceding that the description was really insufficient for vagueness, and, therefore, defective, we think that such a defect did not absolutely vitiate the sale, and that it was a defect which could be cured by the ratification of the seized debtor or of his legal representatives, and that, therefore, it was cured by the prescription of five years, provided for in Art. 3543 of our Civil Code, touching informalities connected with

or growing out of any public sale made by any person authorized to sell at public auction.

These views are sustained by the decision of this Court in 14 An. 777 (Louaillier vs. Castille), where this prescription was held sufficient to cure a defect growing out of the insufficiency or entire want of advertisement, which is imperatively required by law in all public judicial sales. And our conclusion is yet more strongly confirmed by the decision of this Court, in the case of Fraser vs. Zylicz, 29 An. 535, where the same rule was applied to an irregularity or an alleged nullity growing out of a public sale of the property of a minor for less than its appraised value. 7 An. 113, Chambers vs. Wortham; 21 An. 584, Pasiance vs. Powell; 21 An. 673, Holt vs. Board of Liquidators.

We, therefore, hold that the title of the property seized and sold did legally vest in Walling, who was placed in possession of the same by operation of the law, as provided for in Art. 2479 of the Code. In a partition effected in May, 1843, between the members of the Shreveport Town Company, the lot of ground in litigation was allotted to T. T. Williamson.

2d. The argument of defendant that Walling was absolutely divested of his title to this property by his voluntary surrender to his creditors in 1852, finds no sanction either in reason, law or authority.

It has been frequently held, and we take it as the settled doctrine in our jurisprudence, that the surrender of an insolvent does not divest him of title to the property which he surrenders, but merely strips him of all power to control, alienate or dispose of the same during the administration of his estate. Fitzgerald vs. Philips, 4 M. 562; Rivas vs. Hunstock, 2 R. 187.

The record shows that Walling, in his schedule, while he did not specially describe this identical lot, stated that he intended to surrender "all other property of which he has an interest, being and lying in said town of Shreveport."

His deed in the sheriff's sale having been put of record long previous to the date of his surrender, this property was, therefore, included in his surrender, and became subject to the control and administration of the syndic ; and such declaration on the part of Walling certainly exculpates him from any suspicion or imputation of fraud or fraudulent concealment of his property in his insolvency proceedings.

The record further shows that Walling died in 1859, and that the administration of his syndic terminated in 1867, when he was discharged, on presenting his final account which was not opposed. The record fails to show any act or complaint of the creditors or of any of them, touching the omission, refusal or neglect of the syndic to in-

clude this property in his administration and in his sale of the effects of the insolvent.

Hence, we hold that, under this state of facts, the lot of ground reverted to the ownership and possession of Walling's heirs, and that no act of their ancestor estops them from claiming this property, as no creditors of the deceased have ever asserted any claim against his succession. In the case of Perry vs. Municipality, 11 An. 158, presenting circumstances and issues strikingly similar to those now under consideration, the Court held that the heirs of the insolvent were not debarred from their right to claim the property of their ancestor, which had been surrendered by him to his creditors, and not disposed of by the syndic.

3d. On the plea of prescription of ten years' possession urged by the defendant, the record shows that, as far back as 1860, the defendant and another person had taken joint and undivided possession of this lot of ground without title or legal authority; that after the withdrawal of his co-possessor, Morefield had continued his precarious possession alone for several years until his purchase from Williamson's agent in 1870. The evidence also proves that Morefield knew of the titles of Walling to the property, that he urged Williamson's agent to make him a sale of the property; that the agent, who was the son of Williamson, at first disclaimed any title to the land either in his father or in himself, but finally consented to sell to Morefield, without warranty such title as his father had to the property, after cautioning his vendor that he would have to take the chances of a lawsuit about his purchase; and that the land was sold for $300, a price much under the value of the property at the time.

These facts abundantly show that Morefield, who knew so well the defects of the titles which he acquired under that sale, was not a purchaser in good faith, and that he, therefore, lacks the most vital and essential element or ingredient required by law in the possession of ten years to sustain the prescription on which he relies. This proposition is elementary and textual, and needs no authority in support of its application in this case.

As a possessor in bad faith, Morefield is responsible for the rents and revenues of the property from the date of his possession under his purchase, and the right of the lawful owner in a petitory action to claim and recover the rents, cannot be barred by the prescription of either one or three years, which has been pleaded on appeal by defendant.

The prescription of three years which he invokes, applies to actions on contracts for rent or hire, but not to the obligation imposed by law on the possessor in bad faith to restore to the lawful owner all the rev-

enues of his property of which he has been deprived during the possession of the defendant, whether the bad faith of the latter be moral, or merely legal or constructive.

This principle has been recognized, reaffirmed and consecrated by an unbroken line of decisions from the earliest days of our jurisprudence down to the present time. Donaldson vs. Hull, 7 N. S. 112; Williams vs. Booker, 12 R. 256; Rhodes vs. Hooper, 6 An. 356; Lowry, Curator, vs. Erwin, 6 R. 211; Hill vs. Bowden, 3 An. 258; Walworth vs. Stevenson, 24 An. 253.

The judgment of the lower court, sustained by the law and the evidence, is correct, and is, therefore, affirmed with costs.